IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

FRANK MAKI,

                Plaintiff,        Civil Action No.
                                              3:14-CV-0008 (TJM/DEP)

   v.

THE TRAVELERS COMPANIES,
INC., *et al.*,

                Defendants.

_____

APPEARANCES:                             OF COUNSEL:

FOR PLAINTIFF:

Frank Maki, *Pro Se*
4789 Route 23
Walton, New York 13865

FOR DEFENDANTS:

[NONE]

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT, RECOMMENDATION, AND ORDER

    *Pro se* plaintiff Frank Maki has commenced this action against four entities and seven individuals pursuant to the Sherman Antitrust Act, 15 U.S.C. 1, *et seq.*, and New York State common law. Plaintiff's complaint

and accompanying application for leave to proceed *in forma pauperis* ("IFP") have been forwarded to me by the clerk for review. For the reasons set forth below, plaintiff's IFP application is granted. I recommend, however, that plaintiff's federal law claims be dismissed for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B), with leave to amend, and that, if plaintiff's federal claims are not reinstated, the court decline to exercise supplemental jurisdiction over plaintiff's state law causes of action.

I. BACKGROUND

Plaintiff's complaint alleges that, on or about August 7, 2008, plaintiff met with defendant Stephanie Tweedie, an insurance broker for defendant Mang Insurance Agency ("Mang"), to obtain a Bobtail Liability and Collision Insurance policy covering his class eight tractor. Dkt. No. 1 at 3, 4. That meeting took place at defendant Mang's office located in Walton, New York. *Id.* at 5. Liberally construing plaintiff's complaint, it appears that the insurance policy was to be issued by defendant Northland Insurance ("Northland"), a wholly owned subsidiary of defendant Travelers Companies, Inc. ("Travelers"). *See generally* Dkt. No. 1.

After reviewing the insurance binder for the policy coverage, plaintiff signed it and provided defendant Tweedie with a check in the full amount

2

of the annual premium. *Id.* at 5. Defendant Tweedie informed plaintiff that the full contract would not be ready for "some time," but that he could pick up his New York State insurance identification card before the contract was complete. *Id.* Defendant Tweedie also informed Maki that, to complete the contract, he would need to provide her with "a full lease agreement and permanent registration." *Id.* at 6. That request from defendant Tweedie presumably referred to the forthcoming lease agreement between CRST Malone and plaintiff for the tractor that was to be the subject of the insurance policy. *Id.* Plaintiff retrieved his New York State insurance identification card from defendant Mang's Walton office on August 12, 2008, and thereafter began working for CRST Malone as a trucker. Dkt. No. 1 at 6.

On August 28, 2008, after completing the lease agreement with CRST Malone and being provided a copy of the registration for the tractor, plaintiff delivered copies of both to defendant Mang. Dkt. No. 1 at 7. According to plaintiff, he handed the copies of those documents to defendant Melissa Prisco. *Id.* at 3, 7. CRST Malone also sent defendant Mang copies of those documents. *Id.* at 7. Defendants Tweedie and Prisco removed three pages from the lease agreement, and then sent the incomplete copy to defendant Mang's office located in Binghamton, New

York, to be forwarded to defendants LoVullo Associates (a general insurance broker), Northland, and Travelers. *Id.*

Plaintiff received a letter from defendant Molly Janitz, an insurance broker employed by defendant Mang, requesting an additional copy of the CRST Malone lease agreement and tractor registration. Dkt. No. 1 at 3, 8. As a result, for the second time, plaintiff provided the requested documents on October 6, 2008, to defendant Prisco at the Walton office. *Id.* at 8.

Plaintiff's tractor was involved in an accident on December 6, 2008, near Knoxville, Tennessee. Dkt. No. 1 at 9. As a result of the accident, the tractor was destroyed, and plaintiff was seriously injured. *Id.* Following the accident, plaintiff was forced to store the tractor with a towing facility near Knoxville, at a cost of $50 per day. *Id.* at 10. Plaintiff believes that "[t]he anxiety and emotional distress caused by the insurance confusion contributed to the mistake [he] made that led to the accident." *Id.*

Upon returning home from the hospital following the accident, on or about December 11, 2008, plaintiff contacted defendant Tweedie to report the accident and initiate a claim under the insurance policy he purchased in August 2008. Dkt. No. 1 at 11. At that time, defendant Tweedie

informed plaintiff that the policy had been canceled, and shortly thereafter, plaintiff received a refund check from defendant Mang for the amount of the insurance premium. *Id.* In January 2009, plaintiff received a letter from defendant Tweedie indicating that the insurance policy had been canceled due to the fact that a page was missing from the lease agreement. *Id.* Defendant Michelle Meschke, Esq., Compliance Officer, Assistant Secretary and Counsel for defendant Northland, contacted plaintiff in March 2010 to communicate that defendant Northland had properly canceled the insurance contract. *Id.* at 15.

After obtaining an independent appraisal of the truck while it was at the storage facility in Tennessee, plaintiff paid the balance of the truck loan in the amount of $2,864, sold the vehicle to a salvage yard for $2,000, and paid the storage fees in the amount of $3,332. Dkt. No. 1 at 12. Plaintiff's injuries resulting from the accident have prevented him from returning to work. *Id.*

Based upon of the foregoing allegations, plaintiff's complaint asserts four causes of action against all defendants, including breach of contract and fraud arising under New York State common law, as well as group boycott and attempted monopolization claims arising under the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq. See generally* Dkt. No. 1.

II. DISCUSSION

    A. Application to Proceed *In Forma Pauperis*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. §§ 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1).[1] In this instance, because I conclude that plaintiff meets the requirements for IFP status, his application for leave to proceed IFP is granted.[2]

    B. Sufficiency of Plaintiff's Claims

        1. Legal Standard

Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). Section

---

[1] The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of New York*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[2] Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). However, the court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face

of the complaint.'"  *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court looks to applicable requirements of the Federal Rules of Civil Procedure for guidance.  Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

2. Analysis

i. Plaintiff's Sherman Antitrust Act Claims

Plaintiff's complaint asserts vertical group boycott and attempted monopolization claims against all defendants arising under the Sherman Antitrust Act. Dkt. No. 1 at 22-26.

a. Vertical Group Boycott

Section one of the Sherman Antitrust Act "prohibits group boycotts or concerted refusals to deal."[3] *Moccio v. Cablevision Sys. Corp.*, 208 F. Supp. 2d at 361, 378 (E.D.N.Y. 2002) (citing *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 133-34 (1998)). "Group boycotts. . . are conscious, conspiratorial embargos by one group of market participants of another group of market participants." *Moccio*, 208 F. Supp. 2d at 378 (citing *Klor's Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 212 (1959)). Although horizontal group boycotts, which are agreements among market participants "within the same market tier not to deal with other competitors or market participants," are *per se* illegal, vertical boycotts are generally "subject to the rule of reason analysis." *Moccio*, 208 F. Supp. 2d at 378-79. Vertical group boycotts are described as "agreements among persons

---

[3] Specifically, section one provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce . . . is declared to be illegal." 15 U.S.C. § 1.

or organizations at different levels of the market structure not to deal with other market participants." *Id.* at 378 (citing *U.S. v. Topco Assocs., Inc.*, 405 U.S. 596, 608 (1972)).

To state a claim asserting a group boycott, a plaintiff "must allege an impermissible agreement among legally distinct entities that constitutes an unreasonable retraint of trade." *Moccio*, 208 F. Supp. 2d at 379 (citing *Primetime 24 Joint Venture v. Nat'l Broad., Co., Inc.*, 219 F.3d 92, 103 (2d Cir. 2000)); *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) ("Independent actions taken by an entity fall outside the purview of [section] 1"). Plaintiffs asserting antitrust claims that are subject to the rule of reason analysis, like a vertical group boycott claim, must also allege that the defendants' "challenged conduct had an actual adverse effect on competition as a whole in the relevant market." *Moccio*, 208 F. Supp. 2d at 379 (quotation marks omitted)). To satisfy this burden, a plaintiff must plead "actual adverse relevant market effects such as reduced output, increased prices, decreased quality, or the imposition of entry barriers." *Id.* (citing *Virgin Atl. Airways Ltd.*, 257 F.3d at 264).

In this case, the allegations contained in the complaint that primarily relate to the vertical group boycott claim are as follows:

> 137. The contract for insurance had been paid for and formalized. However, the employees of Mang destroyed documents based on a plan to falsely claim that the insurance contract had been cancelled in the event [plaintiff] had an accident and needed to collect under the contract.
>
> 138. LoVullo, Northland and Travelers aided and abetted the fraud by igoring the evidence of wrongdoing by the Mang employees, knowing they would be wrongly denying payment on the contract.
>
> 139. This made a chain of deceit that operated at each stage of consideration from the retail producers of Mang all the way to the top of the hierarchy, the holding company, Travelers Insurance.
>
> . . .
>
> 142. Meschke was the last person with supervisory capacity who could have corrected the fraud and avoided completion of the vertical boycott . . . .
>
> 143. [Plaintiff] has stated a cause of action against the defendants for operating an illegal group boycott in violation of the Sherman Antitrust Act.

Dkt. No. 1 at 22-24. None of those allegations plausibly suggest the existence of either concerted action by the defendants or actual adverse effect on competition. As an initial matter, plaintiff's complaint alleges that defendant Northland is "a wholly owned subsidiary of [defendant] Travelers[.]" Dkt. No. 1 at 2. Because "[p]arents and their wholly owned

subsidiaries are not legally distinct" for purposes of section one, plaintiff's vertical group boycott claim fails to the extent it is asserted against to those two entities. *Moccio*, 208 F. Supp. at 379 (citing *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984)). In any event, even if all of the defendants are distinct entities, plaintiff's complaint fails to state anything but conclusory allegations regarding their concerted action. *See, e.g.,* Dkt. No. 1 at 22 ("The defendants conspired to operate a vertical group boycott in order to discriminate against [plaintiff] and restrain trade in insurance."), 23 (describing defendants' alleged fraud as "a chain of deceit"). In addition, the complaint has not alleged that defendants' conduct had an adverse effect on the relevant market. *Moccio*, 208 F. Supp. 2d at 379. Instead, plaintiff merely alleges that the defendants' conduct in this case "restrained him from trading for other insurance." Dkt. No. 1 at 23.

Because plaintiff's complaint does not allege sufficient facts plausibly suggesting that the defendants acted in concert to adversely affect the insurance market, I recommend that his vertical group boycott claim be dismissed.

b.  <u>Attempted Monopolization</u>

Plaintiff also asserts an attempted monopolization claim against the defendants, Dkt. No. 1 at 24-26, which is governed by section two of the Sherman Antitrust Act, 15 U.S.C. § 2.  That provision precludes "any combination or conspiracy to monopolize or attempt to monopolize interstate or international commerce."  *Moccio*, 208 F. Supp. 2d at 376 (citing 15 U.S.C. § 2).  To state a claim under section two for attempted monopolization, a plaintiff must allege facts plausibly suggesting "(1) anticompetitive or predatory conduct; (2) specific intent to monopolize; and (3) dangerous probability of achieving monopoly power."  *Moccio*, 208 F. Supp. 2d at 376 (citing *Spectrum Sports v. McQuillan*, 506 U.S. 447, 456 (1993)); *see also Int'l Distrib. Ctrs., Inc. v. Walsh Trucking Co., Inc.*, 812 F.2d 786, 790 (2d Cir. 1987)).  With respect to the third element, the Second Circuit has said a plaintiff must adequately plead that the defendant holds a "sufficient market share . . . because a defendant's market share is the primary indicator of the existence of a dangerous probability of success."  *AD/SAT, Div. of Skylight, Inc. v. Assoc. Press*, 181 F.3d 216, 226 (2d Cir. 1999) (quotation marks omitted).  In order for the court to determine the defendant's market share, the plaintiff must sufficiently plead the "relevant product and geographical markets."

14

*AD/SAT*, 181 F.3d at 227.

In this case, in support of his attempted monopolization claim, plaintiff's complaint alleges as follows:

> 146. Northland has a virtual monopoly on the type of commercial truck insurance purchased by [plaintiff]. Therefore, Travelers and Northland know that if a truck is disabled and will no longer be used in the trucking industry, the insurance policy for the truck will be cancelled; however, because of Northland's near monopoly position, Travelers and Northland know that the truck is added to cover the loads carried by the disabled truck will, mostly probably be insured by Northland.
>
> 147. This monopoly power makes it easy to implement a policy that will improve Travelers' and Northland's profitability. The insurers simply have to discriminate against inexpensive trucks with small insurance premiums and work to get them replaced by newer trucks with substantially higher insurance premiums.
>
> 148. In the present case, the insurers knew that [plaintiff]'s truck was insured for a value far below the average value of the trucks the insurers provide coverage for. That made [plaintiff] a target for discrimination.
>
> 149. [Plaintiff]'s truck was insured for $11,000. A new truck in 2008 cost over $100,000 and most were insured for replacement value. So, if [plaintiff]'s truck is replaced by a new truck, the insurance premium on the new truck will be several times as much as the premium [plaintiff] was paying.

Dkt. No. 1 at 24-25. Even if the court accepts that plaintiff has sufficiently

alleged the relevant product market (*i.e.,* commercial truck insurance), none of the above-quoted allegations, nor any others in the complaint, plausibly suggest the relevant geographical market that defendants allegedly attempted to monopolize. Moreover, plaintiff cannot satisfy the requirements that he plead "anticompetitive or predatory conduct" or that defendants hold a sufficient market share by merely (and conclusorily) alleging that defendant Northland has a "virtual monopoly" on the commercial truck insurance market. Factors a court considers when determining whether a defendant possesses sufficient market share to become dangerously close to achieving monopoly power are the "strength of competition in the relevant market share, entry barriers to the relevant market[,] and probable market development[.]" *Moccio*, 208 F. Supp. 2d at 376-77 (citing *Spectrum Sports*, 506 U.S. at 456). Plaintiff's complaint does not allege any facts that relate to those factors.

For all of the foregoing reasons, I recommend that plaintiff's attempted monopolization claim be dismissed.

        ii.       <u>Plaintiff's New York State Common Law Claims</u>

In the event the assigned district judge adopts my recommendations regarding plaintiff's claims arising under federal law, the only two claims that will remain are state law claims of breach of contract and fraud. *See*

*generally* Dkt. No. 1. Under those circumstances, I would recommend that the court decline to exercise supplemental jurisdiction over the remaining claims, pursuant to 28 U.S.C. § 1367.[4] *Stephenson v. Albany Cnty. Policymakers*, No. 09-CV-0326, 2009 WL 2922805, at *2 (N.D.N.Y. Aug. 14, 2009) (Treece, M.J.) (citing 28 U.S.C. § 1367(c)(3)).

C. <u>Whether to Permit Amendment</u>

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not

---

[4] Notwithstanding plaintiff's assertion to the contrary, jurisdiction in this case is not proper based on diversity. Dkt. No. 1 at 1. In pertinent part, 28 U.S.C. § 1332 provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, . . . and is between. . . citizens of different States." 28 U.S.C. § 1332(a)(1). In this case, although plaintiff's prayer for relief satisfies the amount in controversy requirement, it does not satisfy the residency requirement because plaintiff and several defendants are all residents of New York. Dkt. No. 1 at 1-2. *See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998) ("It is axiomatic that, for diversity jurisdiction to be available, all of the adverse parties in a suit must be completely diverse with regard to citizenship.").

required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). Here, although I have serious doubts as to whether the underlying facts in this case give rise to any federal law claim, I concede the small possibility that, with the inclusion of additional factual allegations, plaintiff may be able to state an antitrust claim. For that reason, I recommend that plaintiff be permitted to submit an amended complaint that cures the deficiencies identified in this report.

In the event plaintiff chooses to file an amended complaint, he is advised that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document

previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)).

III. SUMMARY AND RECOMMENDATION

Although plaintiff's application for leave to proceed IFP in this case supports a finding that he is eligible for that status, the allegations giving rise to this action do not support a federal law claim, and I do not recommend the court exercise supplement jurisdiction over the two remaining state law causes of action. Accordingly, it is hereby

ORDERED that plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) be GRANTED; and it is further respectfully

RECOMMENDED that plaintiff Maki's complaint be dismissed, with leave to amend; and it is further

RECOMMENDED that, in the event plaintiff fails to file an amended complaint in this action within the timeframe deemed acceptable by the assigned district judge, this action be dismissed without prejudice to plaintiff's right to commence an action in a state court of competent jurisdiction.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

    It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:    April 3, 2014
             Syracuse, New York

                                                      David E. Peebles
                                                      U.S. Magistrate Judge